```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY


FRANK MATREALE,                   :
                                  :
          Plaintiff,              :    HONORABLE JOSEPH E. IRENAS
                                  :
     v.                           :    CIVIL ACTION NO. 05-2032 (JEI)
                                  :
STATE OF NEW JERSEY               :
DEPARTMENT OF MILITARY &          :         OPINION
VETERANS AFFAIRS, and THE         :
NATIONAL GUARD OF THE UNITED      :
STATES                            :
                                  :
          Defendants.             :
```

**APPEARANCES:**

William A. Riback, Esq.
527 Cooper Street
Second Floor
Camden, New Jersey 08102
    Counsel for Plaintiff

ZULIMA V. FARBER, ATTORNEY GENERAL OF NEW JERSEY
By: Michelle A. Daitz, Esq.
Deputy Attorney General
25 Market Street
P.O. Box 112
Trenton, New Jersey 08625-0112
    Counsel for Defendant State of New Jersey Department of
    Military & Veterans Affairs

CHRISTOPHER J. CHRISTIE, UNITED STATES ATTORNEY
By: Dorothy J. Donnelly, Esq.
402 East State Street
Room 430
Trenton, New Jersey 08608
    Counsel for Defendant-Intervenor National Guard of the United
    States


**IRENAS,** Senior District Judge:

     This lawsuit arises from various personnel actions taken

against Plaintiff Frank Matreale ("Plaintiff") by his supervisors in the New Jersey Army National Guard ("NJANG").  Plaintiff alleges that his supervisors in the NJANG retaliated against him due to his participation in a sexual harassment case against another Guardsman.  Presently before the Court are the Motions for Summary Judgment of Defendant Department of Military and Veterans Affairs of the State of New Jersey[1] ("DMVA") and Defendant-Intervenor National Guard of the United States ("NGUS").

**I.**

Plaintiff joined the NJANG in 1981.  By the time the events giving rise to the instant action occurred, Plaintiff had risen to the rank of Major in the NJANG.

In or about July, 1999, Plaintiff provided a statement to Lieutenant Colonel Kent Milliken ("Lt. Col. Milliken") during an inquiry into sexual harassment allegations against a Sergeant Major in the NJANG.[2]  Although a copy has not been provided to the Court, it appears that Plaintiff's statement supported the account given by the accuser.  The investigation concluded that the Sergeant Major had committed sexual harassment.  The accuser subsequently filed a complaint against the DMVA under the New

---

[1] Through the powers granted to the Adjutant General in N.J.S.A. § 38A:3-6, the DMVA oversees the NJANG.

[2] It appears that Lt. Col. Milliken was Plaintiff's direct supervisor.

Jersey Law Against Discrimination ("NJLAD"), although the outcome of the lawsuit is not clear from the record.

Plaintiff maintains that Lt. Col. Milliken and other NJANG officers engaged in a pattern of retaliation against him for his role in the sexual harassment investigation. On March 18, 2000, Plaintiff was reprimanded by Brigadier General William Marshall ("Brig. Gen. Marshall"), III, for engaging in an improper superior-subordinate relationship and other violations arising from an incident on December 4, 1999, involving Plaintiff, the accuser in the sexual harassment case and several other female non-commissioned officers. (Admin. Rec. Ex. 1 at 15-16) Plaintiff contends that this reprimand was based on "misinformation and lies" provided to Brig. Gen. Marshall by Lt. Col. Milliken, and that his relationship with the accuser was strictly professional. (Admin. Rec. Ex. 1 at 17, 21) Brig. Gen. Marshall's letter of reprimand was placed in Plaintiff's personnel file.

He contends that Lt. Col. Milliken intentionally delayed Plaintiff's officer evaluation report due on January 31, 2000, until November 7, 2001. Plaintiff maintains that Lt. Col. Milliken did this so that Plaintiff could not appeal the derogatory statements made within the report in time to correct the report before his Selective Retention Board was convened. (See Admin. Rec. Ex. 1 at 26-7) He maintains that the derogatory report prevented him from being promoted to Lieutenant Colonel and

eventually led to his termination from NJANG, although the termination was later overturned.

Plaintiff also contends that Lt. Col. Milliken berated and humilitated him in front of other officers, including one situation in which Lt. Col. Milliken ordered a subordinate officer to remove Plaintiff from his command.[3]  After this incident, Plaintiff privately asked Lt. Col. Milliken to cease the harassment, but Lt. Col. Milliken again berated and humiliated him for making the request.  According to Lt. Col. Milliken, Plaintiff used "insulting, profane and disrespectful language" in speaking to him.  (Admin. Rec. Ex. 1 at 24-5)

Lt. Col. Milliken and Adjutant General Paul Glazar ("Adj. Gen. Glazar") then brought charges against Plaintiff under the Uniform Code of Military Justice ("UCMJ") for conduct unbecoming an officer and a gentleman as a result of this incident.  (Id.)  On December 4, 2000, Brig. Gen. Marshall found that Plaintiff violated the UCMJ and ordered him to forfeit two months of his salary.  (Id.)  Plaintiff did not appeal the determination.

Plaintiff further contends that Lt. Col. Milliken and Adj. Gen. Glazar agreed to remove documentation of the UCMJ charge from Plaintiff's personnel file, but that Lt. Col. Milliken later violated this agreement and included the records in the file.  As

---

[3] It is not clear from the record the exact date on which this incident occurred, however, it appears to have been in April, 2000.

a result, Plaintiff was denied a promotion.  Plaintiff applied to the Board for the Correction of Military Records to have the UCMJ charge information and resulting general officer memorandum of reprimand, as well as the November, 2001, officer evaluation report, removed from his file.  The Board has not yet made a final determination.  It appears, however, that at least some of this information was removed from Plaintiff's personnel file by Lt. Col. Milliken's successor.

Plaintiff's unit was mobilized for service in Iraq on August 19, 2004.  Plaintiff remains on active duty with the Army to this date.

Plaintiff filed a Complaint against the DMVA in the Superior Court of Burlington County, New Jersey, on or about October 16, 2003.  Plaintiff alleges that the DMVA, apparently through Lt. Col. Milliken and other members of the NJANG, retaliated against him for taking part in the sexual harassment investigation in violation of NJLAD.  He seeks compensatory and punitive damages, reinstatement,[4] and any declaratory or injunctive relief[5] which may be proper.

---

[4]Given that Plaintiff has not alleged that he has lost his job or was demoted, the Court interprets this request as seeking the promotion Plaintiff alleges he would have been given had the improper information not been included in his file.

[5]The Complaint specifies "purging Plaintiff's personnel file of all derogatory statements."  (Compl. Counts II & III)  It appears that some of the materials to which Plaintiff objects have been removed from his file.

On March 18, 2005, Judge Marie White Bell of the Superior Court signed an order permitting the NGUS to intervene in the case.  NGUS removed the case to the District of New Jersey on April 14, 2005, with the consent of DMVA.

**II.**

Under Fed. R. Civ. P. 56(c), a court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In deciding a motion for summary judgment, the court must construe the facts and inferences in a light most favorable to the non-moving party.  *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

The role of the court is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The non-moving party may not rest on its pleadings to oppose a summary judgment motion but must affirmatively come forward with admissible evidence establishing a genuine issue of fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### III.

NGUS and DMVA filed separate motions for summary judgment. Both Defendants seek dismissal of the Complaint on the grounds that Plaintiff's claims under NJLAD are barred by the doctrine of intra-military immunity or are otherwise non-justiciable.

### A.

In *Feres v. United States*, 340 U.S. 135 (1950), the United States Supreme Court held that the government is not liable under the Federal Tort Claims Act ("FTCA") for injuries to servicemen arising out of or in the course of activity incident to military service. In three related cases, the *Feres* decision rejected the claims of the executors of the estates of two soldiers, one who died in a barracks fire and the other as the result of allegedly negligent medical care, as well as the medical malpractice claim of a soldier who discovered that an Army surgeon left a towel in his abdomen during a procedure. The Court noted that "[t]he relationship between the Government and members of its armed forces is 'distinctly federal in character'" and that "[n]o federal law recognizes a recovery such as claimants seek." *Feres*, 340 U.S. at 143-44 (citation omitted).

The doctrine of intra-military immunity first introduced in *Feres* has been expanded in subsequent decisions of the Supreme Court to encompass a greater range of claims and defendants. In

*Chappell v. Wallace*, 462 U.S. 296 (1983), the Court extended the ruling in *Feres* to bar *Bivens* actions by soldiers against their superior officers, noting that "[h]ere, as in *Feres*, we must be '[concerned] with the disruptions of '[the] peculiar and special relationship of the soldier to his superiors' that might result if the soldier were allowed to hale his superiors into court.'" *Chappell*, 462 U.S. at 304 (citations omitted).[6]

The Third Circuit addressed the scope of the *Feres* intra-military immunity doctrine in *Jorden v. National Guard Bureau*, 799 F.2d 99 (3d Cir. 1986). In *Jorden*, a former member of the National Guard sued the National Guard Bureau ("NGB"), the Chief of the NGB, and the plaintiff's supervisors in the Pennsylvania Air National Guard ("the PANG defendants"), pursuant to 42 U.S.C. § 1983, alleging a conspiracy to harass and discharge him based on

---

[6]*See also United States v. Shearer*, 473 U.S. 52, 57-60 (1985)(*Feres* bars FTCA claim against the United States arising from the off-base kidnap and murder of an off-duty serviceman by another serviceman); *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 673-74 (1977)(extending *Feres* to bar indemnification claim brought against the United States by a government contractor in a negligence suit by a National Guardsman arising from injuries incurred during training mission); *Major v. United States*, 835 F.2d 641, 645 (6th Cir. 1987)(analysing *Feres* line of cases)("Review of these Supreme Court precedents makes it clear that in recent years the Court has embarked on a course dedicated to broadening the *Feres* doctrine to encompass, at a minimum, *all* injuries suffered by military personnel that are even remotely related to the individual's *status* as a member of the military, without regard to the location of the event, the status (military or civilian) of the tortfeasor, or any nexus between the injury-producing event and the essential defense/combat purpose of the military activity from which it arose.")(emphasis in original).

his race and in retaliation for his exercise of his First Amendment rights. The Third Circuit concluded that the reasoning of *Chappell* extended to Section 1983 damages actions against state military officers, relying on the Supreme Court's command in *Butz v. Economou* that "where immunity of government officials is concerned, § 1983 and *Bivens* claims must be treated alike." *Jorden*, 799 F.2d at 105 (citing *Butz*, 438 U.S. 478 (1978)); *see also Loughney v. United States*, 839 F.2d 186 (3d Cir. 1988)(holding that *Feres* bars FTCA suit brought on behalf of Pennsylvania National Guard sergeant who was on Active Guard Reserve Duty Status when injured).

Neither the Supreme Court nor the Third Circuit have been presented with a case where, as here, a guardsman has brought a state statutory claim against a state department of military affairs. Several decisions in related cases, however, indicate that the Circuit would extend the doctrine of intra-military immunity to cover Plaintiff's LAD claim.

In *Jorden*, the Third Circuit held that the PANG defendants were entitled to immunity from the state law defamation claim brought by the plaintiff "in light of the recent decisions of the [Supreme] Court restricting the availability of damages actions against the military. . . ." 799 F.2d at 108 n.12. Similarly, *Jaffee v. United States*, 663 F.2d 1226 (3d Cir. 1981), held that the rationale of *Feres* extended to bar a soldier's state law

intentional tort claims against his Army supervisors arising from his military service. The Third Circuit noted that "[s]uits founded on state law have the same potential for undermining military discipline as federal tort claims." 663 F.2d at 1239.

The District of New Jersey in *Egloff v. New Jersey Air National Guard*, 684 F. Supp. 1275 (D.N.J. 1988), dismissed the state law claims brought by two former members of the Air National Guard against their supervisors arising from their discharge from guard service. Citing *Chappell*, *Jorden* and *Jaffee*, the District Court stated that "[c]onsistency with these authorities, we believe, requires the court to hold that plaintiffs' damage claims against their Air National Guard [supervisors] founded upon state law for actions which allegedly transpired while plaintiffs were participants in military training pursuant to Title 32 of the United States Code are barred by the military immunity doctrine." *Egloff*, 684 F. Supp. at 1283.

At the time of the events relevant to the Complaint, Plaintiff was a member of the NJANG and the Army National Guard of the United States ("ANGUS"). Plaintiff was participating in training exercises on orders issued pursuant to 32 U.S.C. § 502(f), which provides:

> Under regulations to be prescribed by the Secretary of the Army . . ., a member of the National Guard may-
>     (1) without his consent, but with the pay and
>     allowances provided by law; or
>     (2) with his consent, either with or without pay
>     and allowances;

>     be ordered to perform training or other duty in addition
>     to that prescribed under subsection (a).

Plaintiff was paid directly from the United States Treasury. (Aff. of S. Keyes, Donnelly Decl., Ex. 1)  Plaintiff served in a full-time capacity as part of the Active Guard Reserve program (id.), as did the plaintiff in *Loughney*.[7]  Moreover, Guardsmen serving on orders pursuant to Section 502 are considered to be federal employees for the purposes of the FTCA.  28 U.S.C. § 2671.

Plaintiff argues that *Feres* does not apply to Guardsmen serving under orders issued pursuant to Title 32 of the United States Code, as Title 32 Guardsmen retain their state status, citing *Perpich v. Dept. of Defense*, 496 U.S. 334 (1990).  He contends that *Feres* only applies to Guardsmen serving under orders issued pursuant to Title 10, which includes provisions authorizing executive officials to order reserve forces, including ANGUS, the militia of the states and the National Guard units of the various states to active duty.  *See* 10 U.S.C. §§ 331-33, 12301-4, 12406. However, the Third Circuit and this District have applied the *Feres* doctrine to Title 32 Guardsmen.  *See Loughney*, 839 F.2d 186 at 188; *Urie v. Roche*, 209 F. Supp. 2d 412 (D.N.J. 2002)(*Feres* bars Title VII claim by National Guard technician employed pursuant to 32 U.S.C. § 709); *Egloff*, 684 F. Supp. at 1283.

---

[7]In *Stencel Aero*, the plaintiff was also a Guardsman serving on training orders, although the decision does not specifically state that the orders were issued pursuant to 32 U.S.C. § 502. 431 U.S. at 667 n.1.

11

Plaintiff concedes that the injuries for which he seeks recovery arise out of, or were incurred in the course of activity incident to, his military service. This Court thus must conclude that his claims for damages against the Defendants are barred by the doctrine of intra-military immunity.

**B.**

Plaintiff's Complaint also seeks reinstatement and other injunctive or declaratory relief as may be proper, including purging his personnel file of "derogatory" statements. (Compl., Counts II & III) In *Jorden*, the Third Circuit observed that the Supreme Court has not established a per se rule barring judicial review of all military matters, and held that claims by servicemen for injunctive relief, specifically reinstatement, are justiciable unless they call for "ongoing judicial oversight" of the military. 799 F.2d at 108-11; *see also Dillard v. Brown*, 652 F.2d 316 (3d Cir. 1981)(permitting claim by member of National Guard for injunctive relief where plaintiff sought declaration that certain regulations were unconstitutional).

Here, however, Plaintiff has not been terminated from his position with the Guard nor has he been demoted. It appears that he seeks promotion to the rank he might have achieved had the

various reprimands and UCMJ charges not occurred.[8] The *Jorden* exception to the intra-military immunity doctrine for claims seeking injunctive relief in the form of reinstatement is thus not applicable to Plaintiff.

Other courts that have been presented with claims by servicemen for promotion or the correction of military records have found these requests to be non-justiciable. The Court of Appeals for the District of Columbia Circuit noted that:

> The justiciability of this case involving a claim to a military promotion and distinct claims for the correction of military records is limited by the fundamental and highly salutary principle that:
>> [J]udges are not given the task of running the Army. The responsibility for setting up channels through which [complaints of discrimination, favoritism, *et cetera*] can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.
>
> *Orloff v. Willoughby*, 345 U.S. 83, 93-94, 73 S. Ct. 534, 540, 97 L.Ed. 842 (1953).

*Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1511 (D.C. Cir.

---

[8]The Court is aware of the statutory provision which makes retirement mandatory for majors in the Guard who are not selected for promotion more than once after twenty years of commissioned service. *See* 10 U.S.C. § 14506. The record does not reflect whether Plaintiff has been denied promotion more than once or the length of his service as a commissioned officer, and so the Court cannot determine whether this provision affects Plaintiff.

13

1989)(declining to review Air Force major's claim for retroactive promotion).

In *Wenger v. Monroe*, the Ninth Circuit held that a Guardsman's request for injunctive relief was non-justiciable, where the plaintiff sought the removal of a "flag" in his record that prevented his promotion and an injunction barring the Guard from enforcing the mandatory retirement provisions against the plaintiff during the pendency of the suit.  282 F.3d 1068 (9th Cir. 2002).  The Court concluded that:

> To determine whether a flag was appropriately placed on [the plaintiff's] record, and whether the investigation of the [] incident was conducted properly, a court would have to review all of the details of the placement of the flag and the conduct of the investigation.  Thus, . . . , review in this case would require a court to scrutinize numerous decisions made by various individuals, and would necessarily "involve the court in a very sensitive area of military expertise and discretion."

*Id.* at 1076 (citations omitted).

This Court finds the rationale of *Kreis* and *Wenger* to be persuasive, and thus will hold Plaintiff's request for reinstatement / promotion and other injunctive or declaratory relief to be non-justiciable.  If the Court were to hold otherwise, further proceedings would be required to review the correctness of the charges leveled against Plaintiff and to assess his fitness for promotion.  It is beyond the competence of this Court to determine whether an Guardsman is qualified to be promoted to a higher rank, and outside its proper role to intrude

14

upon the day to day operation of the military chain of command and its system of discipline in this fashion.

**IV.**

For the reasons set forth above, the summary judgment motions of DMVA & NGUS will be granted. The Court will issue an appropriate order.

Date: March  8 , 2006

s/*Joseph E. Irenas*<br>JOSEPH E. IRENAS, S.U.S.D.J.